**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANNON R. MARCIANTE,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 18-1144 (MAS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Shannon R. Marciante's ("Plaintiff") appeal from the final decision of Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II and Part A of Title XVI of the Social Security Act. The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court affirms the Administrative Law Judge's ("ALJ") decision.

I. **BACKGROUND**

A. **Procedural History**[1]

Plaintiff applied for DIB on March 10, 2014, alleging disability beginning on December 29, 2013. (AR 55-69.) This claim was denied initially on April 30, 2014, and again upon reconsideration on November 25, 2014. (*Id.* at 55-69, 71-86.) The ALJ conducted an administrative hearing on November 28, 2016, following which the ALJ issued a decision finding that Plaintiff was not disabled. (*Id.* at 13-22, 29-54.) The Appeals Council denied Plaintiff's request for review on December 8, 2017. (*Id.* at 1-4.) On January 29, 2018, Plaintiff filed an appeal to the District Court of New Jersey. (ECF No. 1.) The case was reassigned to Chief Judge Jose L. Linares on April 13, 2018. (ECF No. 3.) Plaintiff filed her moving brief on October 31, 2018 pursuant to Local Civil Rule 9.1. (ECF No. 17.) The Commissioner filed opposition on December 14, 2018. (ECF No. 19), and Plaintiff replied on December 20, 2018 (ECF No. 20). On February 4, 2019, this case was reassigned to the Undersigned for all further proceedings. (ECF No. 21.)

B. **Factual History**

Plaintiff is a forty-seven year-old female born on February 3, 1972. (AR 161.) She holds a high school diploma, and "completed one year of college." (*Id.* at 187.) She completed specialized training as a secretary in 1992. (*Id.*) Plaintiff worked as a legal assistant from November 1995 to July 2013. (*Id.*) Plaintiff's employer died in February 2013, and from February 2013 through July 2013, Plaintiff assisted in closing her deceased employer's practice and reassigning his cases to other attorneys. (*Id.* at 39-40.) Plaintiff filed her initial disability claim based on: "[four] screws

---

[1] The Administrative Record is located at ECF Nos. 12-1 through 12-11. The Court will reference the relevant pages of the Administrative Record ("AR") and will not reference the corresponding ECF citation within those files.

and a cage in cervical neck," "throbbing and piercing pain radiating down both arms," "left full knee replacement," and "numbness in both hands." (*Id.* at 55, 71.) Plaintiff contemporaneously chose to file an application for Supplemental Security Income. (*Id.* at 163-68.)

At the hearing, Plaintiff testified that she was involved in a car accident in 2008, and as a result of that accident, she injured her neck. (*Id.* at 37-38.) She testified that she was able to work from 2008 through 2013, although "it was just very painful to work." (*Id.* at 38.) Plaintiff also testified that she had neck surgery in 2011 and knee surgery in 2012, for which she was granted temporary disability. (*Id.*) Plaintiff testified that her employer died in February 2013. (*Id.* at 39.) Plaintiff further testified that she worked to close his office from February 2013 to July 2013, following which time she went on "unemployment, [which] then turned into state disability." (*Id.* at 39-40.) Plaintiff stated that she did not attempt to find another job because she was "trying to deal with the pain." (*Id.* at 40.) She also testified that she has undergone treatment with various pain management doctors, including Dr. Garnishment and Dr. Tydings. (*Id.* at 41.) She testified that upon successful completion of her first neck surgery, her doctors performed "epidural shots and facet shots." (*Id.*) Plaintiff also testified that she underwent knee surgery in 2012, after which she engaged in physical therapy. (*Id.* at 46.) Plaintiff indicated that she suffers from numbness and pain in her hands and frequently drops things. (*Id.* at 48.) Plaintiff stated that she began to suffer from lower back problems in May 2014. (*Id.* at 41-42.) She further stated that she underwent neck surgery in October 2016. (*Id.* at 42.) Plaintiff testified that she has been treated for migraines, which interrupt the functionality of her life. (*Id.* at 46.) According to Plaintiff, she takes medications to combat her pain, including: Percocet, Soma, muscle relaxers, Xanax, and Fioricet. (*Id.* at 44-45.)

C.   **The ALJ's Decision**

On February 17, 2017, the ALJ rendered a decision. (*Id.* at 13-22.) The ALJ set forth the Social Security Administration's five-step sequential process for determining whether an individual is disabled. (*Id.* at 13-15.) At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since December 29, 2013, the alleged disability onset date. (*Id.* at 15.) At step two of the analysis, the ALJ found that Plaintiff had the severe impairment of "degenerative disc disease of the cervical spine." (*Id.*) The ALJ also noted Plaintiff's history of treatment for a "left knee impairment," but found the left-knee impairment non-severe because the medical records lacked evidence that the impairment more than minimally impacted Plaintiff's ability to engage in work-related activities, especially based on the reports of Plaintiff's treating physicians. (*Id.* at 15-16.)

At step three, the ALJ determined that none of Plaintiff's impairments, or combination of impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 16.) The ALJ next found that Plaintiff possessed the residual functional capacity ("RFC") to:

> Perform light work . . . except the claimant is limited to lifting/carrying [twenty] pounds occasionally and [ten] pounds frequently; sitting for six hours; standing for [six] hours; and walking for six hours. She can push/pull as much as she can lift/carry. She can operate hand controls occasionally bilaterally. She can frequently reach overhead bilaterally. She can handle items frequently bilaterally. The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, never kneel, never crouch, and never crawl. The claimant can never work at unprotected heights, or with moving mechanical parts.

(*Id.* at 16.)

4

At step four, the ALJ found Plaintiff able to complete past relevant work ("PRW") as a legal secretary. (*Id.* at 20.) At step five—despite the ALJ's step four determination that Plaintiff was capable of performing PRW—the ALJ found that considering Plaintiff's age, education, and work experience, and relying on the testimony of the vocational expert ("VE"), Plaintiff was able to perform the requirements of representative occupations available in significant numbers in the national economy, such as "[p]arking lot cashier," "[i]nformation clerk," and "[s]torage facility rental clerk." (*Id.* at 22.) The ALJ, accordingly, found that Plaintiff has not been under a disability from December 29, 2013, through March 31, 2016, the last date insured. (*Id.* at 13-22.)

## II. LEGAL STANDARD

### A. Standard of Review

On appeal from the final decision of the Commissioner of the Social Security Administration, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Jones v. Sullivan*, 954 F.2d 125, 127-28 (3d Cir. 1991); *Daring v. Heckler*, 727 F.2d 64, 68 (3d Cir. 1984). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence."

*Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the Court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation omitted). Even if the Court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation omitted).

**B.     Establishing Disability**

In order to be eligible for entitlements under the Social Security Act, a claimant must be unable "to engage in any [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A). For purposes of the statute, a claimant is disabled only if her physical or mental impairments are "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A); *see also* 42 U.S.C. § 1382c(a)(3)(B). A physical or mental impairment is one "that results from

anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); *see also* 42 U.S.C. § 1382c(a)(3)(D).

Social Security regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 416.920(a)(4). The first step considers a claimant's work activity, if any. 20 C.F.R. § 416.920(a)(4)(i). To satisfy the first step, the claimant must establish that she has not engaged in any SGA since the onset of her alleged disability. *Id.* At the second step, the claimant must establish that she suffers from a severe impairment or "combination of impairments." 20 C.F.R. § 416.920(a)(4)(ii). The claimant bears the burden of establishing the first two requirements, and failure to satisfy either automatically results in denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146-49 n.5 (1987). If the claimant satisfies her burden, she proceeds to the third step. The third step of the evaluation procedure requires the claimant to provide evidence that her impairment is equal to one of those impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant demonstrates that she suffers from a listed impairment or that her severe impairment is equal to a listed impairment, she is presumed disabled and is automatically entitled to benefits. *Id.* If her claim falls short, the eligibility analysis proceeds to step four.

The fourth step of the analysis requires the ALJ to determine whether the claimant's RFC permits her to resume her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). "A claimant's RFC measures 'the most [she] can do despite [her] limitations.'" *Zirnsak*, 777 F.3d at 611 (citing 20 C.F.R. § 404.1545(a)(1)). If the Commissioner determines that the claimant cannot resume her past relevant work, the burden presumptively shifts to the Commissioner to show "the existence of other available work that the claimant is capable of performing." *Zirnsak*, 777 F.3d at 612

7

(citations omitted). The Commissioner must show at step five that "given [the] claimant's age, education, and work experience, he or she can still perform specific jobs that exist in the national economy." *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984) (citing *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979)); *see also* 20 C.F.R. § 404.1560. At this step, whether a claimant will receive benefits depends on the Commissioner's finding that the claimant is unable to perform work available in sufficient numbers in the national economy. *Zirnsak*, 777 F.3d at 612.

## III. DISCUSSION

Based on the Court's review of the ALJ's decision and the extensive record in the present case, the Court finds good cause to affirm the findings of the ALJ. In reaching a decision, an ALJ must evaluate the evidence and explain the reasons for accepting or rejecting evidence. *Cotter*, 642 F.2d at 706-07. Here, the ALJ provided sufficient analysis for the Court to review his findings and determine that substantial evidence supports his decision.

Plaintiff advances two arguments in support of the contention that the Commissioner's decision to deny benefits is not supported by substantial evidence: (1) "[t]he ALJ failed to consider the totality of the evidence in assessing [Plaintiff's] disability"; and (2) "[t]he ALJ erred in his evaluation of the intensity, persistence and functionally limiting effects of [Plaintiff's] pain and symptoms." (Pl.'s Moving Br. 17, 23, ECF No. 17; Pl.'s Reply Br. 1, 3, ECF No. 20.) The Court will examine each of these arguments in turn.

### A. The ALJ's Consideration of the Record Evidence

Plaintiff argues that the ALJ failed to consider the opinions of Plaintiff's treating physicians, Dr. Pathakar and Dr. Von Der Schmidt. (Pl.'s Moving Br. 7, 14.) Plaintiff avers that "[Plaintiff's] treating pain management doctor, (Dr. Munoj Pathakar), examined her at least [twenty] times between the date of alleged onset of disability (December 29, 2013) and the end of

8

2015. . . . None of these findings in these at least [twenty] examinations are mentioned by the ALJ in his decision." (*Id.* at 6.) Plaintiff also argues that "[the ALJ] does not even mention Dr. Von Der Schmidt in his opinion despite Dr. Von Der Schmidt having examined [Plaintiff] on multiple occasions and [having] reviewed diagnostic test results." (*Id.* at 14.)

The ALJ has the latitude to deliver a decision in the format he considers most appropriate if his decision provides the opportunity for meaningful court review. *Jones v. Barnhart*, 364 F.3d 501, 504-05 (3d Cir. 2004). Here, as in *Jones*, the ALJ's decision as a whole demonstrates that he considered the record evidence in an effort to catalogue the relative weight and reasons behind his findings, including the opinions of treating doctors Von Der Schmidt and Pathakar. *Id.* at 505. Indeed, as the Commissioner notes in opposition, the ALJ addressed the treatment notes of Dr. Von Der Schmidt in his decision, even if he did not mention Dr. Von Der Schmidt by name. (Def.'s Moving Br. 17; AR 17, 263-70.) Similarly, while the ALJ did not name Dr. Pathakar, he discussed Dr. Pathakar's opinion and treatment notes explicitly in his decision. (AR 19, 315-19.) If the ALJ considers all relevant evidence, explains relative weights and findings, and provides meaningful opportunity for review, Third Circuit precedent permits the ALJ to deliver the decision in the format he deems most appropriate. *Jones*, 364 F.3d at 504-05. The ALJ has the discretion to reference evidence in an appropriate manner, and it is not error to omit a doctor's name if it is clear from the ALJ's decision that he considered the relevant evidence. Plaintiff's argument is, therefore, unpersuasive and unavailing.

### B. Plaintiff's Subjective Complaints of Pain

Plaintiff also contends that the ALJ failed to afford proper weight to her subjective complaints of pain, arguing that the ALJ "committed reversible error by discounting [Plaintiff's] credibility and relied upon improper legal standards." (Pl.'s Moving Br. 23.) Plaintiff argues that

the ALJ should not have relied on the opinion of examining physician Dr. Warshauer, because Dr. Warshauer completed his report in connection with a workers' compensation benefits claim. (*Id.* at 24.) Plaintiff alternatively argues that the ALJ should not have favored Dr. Warshauer's opinion more heavily than the opinions of Plaintiff's other treating physicians. (*Id.* at 25.)

"An ALJ must give great weight to a claimant's subjective testimony of the inability to perform even light or sedentary work [if the] testimony is supported by competent medical evidence." *Schaudeck.*, 181 F.3d at 433. The ALJ "can reject such claims if he does not find them credible" as long as the decision contains a thorough discussion of the reasons behind the findings contained within it. *Id.* (citing *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974)). "The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown*, 649 F.3d 193, 196 n.2 (3d Cir. 2011) (holding that the ALJ's decision not to credit the plaintiff's subjective limitations was supported by the substantial evidence of state agency expert opinion and observational medical evidence contained within the treating physician's reports). "[A] statement by a plaintiff's treating physician supporting an assertion that she is 'disabled' or 'unable to work' is not dispositive of the issue." *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994) (citing *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990)); *see also Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) ("[T]he opinions offered by [the claimant's] treating physicians were conclusory and unsupported by the medical evidence . . . Further, these opinions were not uncontradicted."); *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985) (supporting the ALJ's reliance on a state expert, explaining that "the lack of clinical data . . . outweighed the testimony of [the claimant] and her treating physicians"). "[A]n ALJ may disregard the opinion of a treating physician if 'two physicians in the state agency evaluated the medical

10

findings . . . and concluded that those findings did not reveal any condition that would preclude gainful employment.'" *Brown*, 649 F.3d at 197 (quoting *Jones*, 954 F.2d at 129).

The ALJ in this matter considered both Plaintiff's subjective complaints of pain and the opinions of medical physicians in support of such complaints, and provided specific and detailed limitations to Plaintiff's capability to perform the full range of light work. (AR 15-22.) Specifically, the ALJ relied on two state agency medical experts in finding Plaintiff capable of light work. (*Id.* at 20.) The ALJ also relied on the opinion of examining physician Dr. Warshauer. (*Id.*) Finally, the ALJ afforded "[g]reat weight . . . to the opinion of treating physician, Dr. Sieler, that [Plaintiff] was able to work in a regular capacity, based on [Dr. Sieler's] continuous treatment relationship with [Plaintiff]."[2] (*Id.*) Finally, the ALJ explicitly cited the reports of Plaintiff's treating physician, Dr. Tydings, whose treatment notes indicated that "he did not see any significant spinal cord or foraminal compression on either of the studies, and that the only finding was some mild degenerative change at C3-C4 with some minimal posterior osteophytes." (*Id.* at 17.) The ALJ also relied on the findings of Dr. Tydings that "[h]e did not see any significant misalignment, fracture, tumor, infection or obvious instability." (*Id.*) Here, the ALJ's decision to credit the opinions of certain doctors over others is supported by the evidence of record.

---

[2] The ALJ stated,

> Treating [physician] Dr. Sieler opined consistently from October 2014 through February 2016 that [Plaintiff] was able to work in a regular capacity, with no specific limitations identified. Upon examination, Dr. Sieler repeatedly observed that [Plaintiff] exhibited a normal gait with no assistive device, and normal alignment and range of motion of the left knee. [Plaintiff] consistently presented as neurovascularly intact. . . .

(AR 19, 729-39.)

11

Ultimately, it is not the Court's role to re-weigh the evidence, either against or in favor of Plaintiff, or "impose [its] own factual determinations." *Chandler v. Comm'r*, 667 F.3d 356, 359 (3d Cir. 2011) (citing *Richardson*, 402 U.S. at 401). The ALJ's discretion to rely on two separate state agency physicians in his consideration of the entire record is supported by Third Circuit precedent. *Brown*, 649 F.3d at 196-97; *see also Chandler*, 667 F.3d at 361; *Jones*, 954 F.2d at 129; *Newhouse*, 753 F.2d at 285-86. The ALJ's decision, therefore, is supported by substantial evidence.

## IV. CONCLUSION

For the foregoing reasons, the decision of the ALJ is affirmed. An Order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** June 28, 2019